UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

FILED
MAR 0 6 2013

CLERK

******************************************************************************

| | | |
|---|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC., LARSON MANUFACTURING OF IOWA, INC., and LARSON MANUFACTURING COMPANY, INC., | * * * * * * * | CIV.12-4011<br><br>MEMORANDUM OPINION AND ORDER RE: MOTION TO DISMISS |
| Plaintiffs, | * * | |
| -vs- | * * | |
| CONNECTICUT GREENSTAR, INC., GREENSTAR a/k/a TOUCH 'N HOLD, CONNECTICUT TRADE COMPANY INC., and VALENTIN LUCA, | * * * * * | |
| Defendants. | * * | |

******************************************************************************

In their Amended Complaint Plaintiffs Larson Manufacturing Company of South Dakota, Inc., Larson Manufacturing of Iowa, Inc., and Larson Manufacturing Company, Inc. ("Larson") allege breach of a purchase agreement, breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty for fitness for a particular purpose, fraud, and fraudulent transfers with reference to door closers purchased by Larson. Defendant Valentin Luca has moved to dismiss under Fed. R. Civ. P. 12(b)(2), arguing that this Court lacks personal jurisdiction over him. All of the Defendants have moved to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. Rule 12(b)(6), or in the alternative, to transfer the case to the District of Connecticut. For the reasons set forth in this memorandum opinion, Defendants' motions are denied.

1

# I.
# WHETHER THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT VALENTIN LUCA?

The amended complaint alleges that Defendant Val Luca is liable on the fraud and fraudulent transfer causes of action. Defendants maintain that the Court does not have personal jurisdiction over the claims against Defendant Luca, a Connecticut resident, whose only connection to South Dakota was in his corporate capacity. Defendants further contend that the fiduciary shield doctrine prohibits finding personal jurisdiction over Luca based solely on his corporate acts.

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that personal jurisdiction exists. This is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. Although the evidentiary showing required at the prima facie stage is minimal, the showing must be tested, not by the pleadings alone, but by supporting and opposing affidavits and exhibits. *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-592 (8th Cir. 2011). The evidence is viewed in the light most favorable to the plaintiff and all factual conflicts are resolved in the plaintiff's favor in deciding whether the plaintiff has made the requisite showing. *Digi–Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir.1996). The determination of whether a court has personal jurisdiction over a defendant is normally a two-step analysis. *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1387 (8th Cir.1995). First, the applicable state long-arm statute, S.D.C.L. § 15–7–2, must be satisfied, and second, the Court's exercise of jurisdiction must comport with due process. *Id.* South Dakota construes its long-arm statute to confer jurisdiction to the fullest extent permitted by the Due Process Clause. *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir.1994). As such, the analysis collapses into one step: the due process analysis.

Due process allows a Court to exercise personal jurisdiction over a non-resident defendant only if doing so is consistent with traditional notions of fair play and substantial justice, and if the defendant has sufficient "minimum contacts" with the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). In order to exercise personal jurisdiction over a non-resident defendant the nonresident

defendant's conduct and connection with the forum state must be such that he "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp.*, 444 U.S. at 297. "The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct." *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2789 (2011) (plurality opinion).

To evaluate personal jurisdiction under the due process clause, the Court must consider five factors: (1) the nature and quality of the defendants' contacts with South Dakota; (2) the quantity of their contacts with this state; (3) the relation of the cause of action to the contacts; (4) the interest of South Dakota in providing a forum for its residents; and (5) the convenience of the parties. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996), *quoted in Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 746 n.4 (8th Cir. 2011). The latter two issues are secondary and of less importance than the first three factors. *Land–O–Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir.1983). Because the first three factors are closely interrelated, the Court may consider them together. *Id.* The Court should consider the defendants' contacts with the forum in the aggregate; the Court should look at the totality of the circumstances. *Id.* When judging minimum contacts, a court should focus on "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The relationship of the cause of action to the contacts involves a distinction as to whether the jurisdiction is specific or general.[1] *EFCO Corp. v. Aluma Sys., USA, Inc.*, 983 F.Supp. 816, 820 (S.D. Iowa 1997). "Specific jurisdiction ... may be justified when a defendant, through its contacts with the forum, purposefully avails itself of the privilege of conducting business in the forum, 'in a suit arising out of or related to the defendant's contacts with the forum.' " *Pangaea, Inc. v. Flying Burrito LLC*, 647 at 746(quoting *J. McIntyre*, 131 S.Ct. at 2787–88). The case at hand involves

---

[1] "General jurisdiction refers to the power of a state to adjudicate any cause of action and does not depend on the relationship between the cause of action and the contacts." *Burlington Indus., Inc. v. Maples Industries, Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

3

specific jurisdiction. When the Court considers whether it has specific jurisdiction over nonresident defendants, due process is satisfied if the defendants purposefully directed their activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities. *Wessels, Arnold & Henderson v. National Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995).

A plaintiff need only make a prima facie showing of personal jurisdiction over a defendant to survive a motion to dismiss for lack of personal jurisdiction. This is accomplished by pleading sufficient facts to support a reasonable inference that the defendant can be subjected to jurisdiction in the state in issue. Although a minimal evidentiary showing is required at the prima facie stage, this minimal "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion to dismiss. *K-V Pharmaceutical Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-592 (8th Cir. 2011) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). The Court must view the facts in the light most favorable to the non-moving party. *Kooima v. Zacklift Int'l., Inc.*, CIV 01-4078, 2002 WL 34458064 at *3 (D.S.D. Aug. 22, 2002).

Plaintiffs are South Dakota corporations. The Declaration of Michael Kondratuk, the Director of Engineering for Larson, sets forth that Defendant Luca made sales calls and attended meetings at Larson's offices and testing facilities in Brookings, South Dakota on February 8, 2007, May 11, 2007, May 27, 2008 and July 14, 2008. Defendant Luca sent numerous Emails, made numerous telephone calls, and sent drafts of an agreement to Plaintiffs' representatives in South Dakota until Larson and CGI executed a supply agreement for patented proprietary door closers in April of 2008. Defendant Luca signed the agreement of behalf of Defendant CGI, as its president. In the course of performance of the agreement, and after Larson requested changes to the door closers, Defendant Luca made numerous telephone calls, sent hundreds of Email, and mailed invoices and other correspondence to Larson in South Dakota regarding the door closers. Between 2007 and 2011 Defendant Luca traveled to South Dakota on at least eight occasions to solicit Larson's business and to discuss the alleged defects with the closers. Doc. 36.

Defendants maintain that Defendant Luca is a corporate officer sued in his individual capacity

and that the fiduciary shield doctrine[2] prohibits this Court from finding personal jurisdiction over Defendant Luca based solely on his performance of corporate acts. In support of this position Defendants rely primarily on *Arkansas Rice Growers Co-op. Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986), and *Kooima v. Zacklift Intern., Inc.*, 2002 WL 34458064 (D.S.D Aug. 22, 2002).

In *Arkansas Rice Growers Co-op. Ass'n*, an appeal in a breach of contract and negligent design action, the Eighth Circuit stated, "The law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her individual capacity." 797 F.2d at 574. In that case, the Eighth Circuit held that guarantors of a corporation had insufficient contacts with the state of Arkansas to subject them to personal jurisdiction. Three of the guarantors had traveled to Arkansas on behalf of the corporation. The Eighth Circuit noted that there was no evidence that these three investors had "personally interjected" themselves in negotiations involving the debtor corporation, "a situation in which some courts have asserted personal jurisdiction over a nonresident guarantor who was also an officer or agent of the debtor corporation." *Id.*

In *Kooima v. Zacklift Intern., Inc.*, a patent infringement case, this Court stated, "With regard to jurisdiction over corporate employees, the Supreme Court has made clear that the employee's contacts are not to be judged by the corporation's activities in the forum; rather, the court must look at the degree to which the employee personally participated in the alleged wrongdoing." 2002 WL 34458064 at *2 (citing *Calder v. Jones*, 465 U.S. 783, 790 (1984)). The individual defendant in that

---

[2]One court has characterized the creation and development of the fiduciary shield doctrine as follows:
> "This doctrine of 'fiduciary shield,' ... emerged 'with little notice and with no critical examination' as a novel principle by way of dicta ...." ( *Columbia Briargate Co. v. First Nat. Bank* (4th Cir. 1983) 713 F.2d 1052, 1055.) The doctrine arose in a federal diversity case interpreting New York law; however, it was never accepted by, and has been rejected by, New York's highest court. It has been applied inconsistently in several state and federal courts.

*Taylor-Rush v. Multitech Corp.*, 217 Cal.App.3d 103, 115, 265 Cal.Rptr. 672, 678 (1990) (citations omitted).

case was the President and a semi-retired employee of the corporate defendant and the idea man behind the alleged infringing device. The individual defendant in the *Kooima* case did not advertise, service, manufacture or sell goods in South Dakota, and the Plaintiff was apparently proceeding under an "effects test" or the "stream of commerce" theory.[3] 2002 WL 34458064 at *5.

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that a California court could properly exercise jurisdiction over two Florida newspapermen in a libel action arising out of their intentional conduct in Florida which was allegedly calculated to cause injuries to a California plaintiff in his home state. The Court rejected the defendants' argument that jurisdiction was improper because they were "ordinary employees [unable] to control their employer's marketing activity" and held that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" and therefore provided a basis for jurisdiction. 465 U.S. at 789.

In *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984), a libel action, the Supreme Court referenced *Calder* and stated:

> [W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity. But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him; nor does jurisdiction over a parent corporation automatically establish jurisdiction over a wholly owned subsidiary. [citations omitted]. Each defendant's contacts with the forum State must be assessed individually.

In *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938 (8th Cir. 2001), the Eighth Circuit Court of Appeals held in an action for fraud, negligent misrepresentation, and conversion, that the nonresident officers of a corporate seller who made actionable misrepresentations of a present fact were subject to jurisdiction in Nebraska. The Eighth Circuit explained, "By purposely directing their fraudulent communications at residents of Nebraska, the defendants should have realized that the brunt of the harm would be felt there, *see Calder* [citation omitted], and they should have reasonably anticipated being haled into court there." 236 F3d at 943. The Eighth Circuit in reaching its holding

---

[3]In *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S.Ct. 2780, 2789 (2011 ), a plurality of the Supreme Court held that a defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum, and that as a general rule, it is not enough that a defendant might have predicted that its goods will reach the forum state.

6

recognized that Nebraska's long-arm stature allows its court to exercise jurisdiction over a person causing tortious injury by an act or omission in the state. 236 F.3d at 943. South Dakota's long-arm statute likewise subjects a person to jurisdiction in the state by the "commission of any act which results in accrual within this state of a tort action." S.D.C.L. § 15-7-2(2). In addition, the South Dakota Supreme Court has held that the officers and employees of a corporation are personally liable for their intentional torts. *See Bass v. Happy Rest, Inc.*, 507 N.W.2d 317, 320 (S.D. 1993).

Even those jurisdictions which apply the fiduciary shield doctrine, recognize an exception to the doctrine for a corporate officer's intentional tortious or fraudulent actions. *See, e.g., Black v. Bryant*, 905 F.Supp. 1046, 1052 (M.D. Fla.1995) ("a non-resident corporate officer may be haled into court in Florida if it is alleged that he personally committed an intentional tort expressly aimed at the plaintiff in the forum state"); *Intermed Labs., Inc. v. Perbadanan Geta Felda*, 898 F.Supp. 417, 420 (E.D. Tex.1995) (marketing agents not allowed to benefit from the fiduciary-shield doctrine when plaintiff "alleged fraud with sufficient particularity to overcome the low threshold required for this court to examine whether the quality of their contacts with this forum support exercising personal jurisdiction over them"); *Maleski by Taylor v. DP Realty Trust*, 653 A.2d 54, 63 (Pa.Cmwlth.1994) ("corporate officers and directors are liable for the tortious acts the corporation commits under their direction or with their participation"); *Taylor-Rush v. Multitech Corp.*, 217 Cal.App.3d 103, 118, 265 Cal.Rptr. 672, 680 (1990) ("We are in agreement with those courts that have concluded that an unreasonable and anomalous result would occur if a nonresident individual, acting in his capacity as corporate officer or director, committed a tort for which he may be personally liable and could shield himself from jurisdiction when he could not interpose the same shield as a defense to substantive liability."); *Office Dimensions-Louisiana, Inc. v. King*, 718 So.2d 1052, 1056 (La.App. 1998).

The amended complaint in this action alleges that Defendant Valentin Luca signed the purchase agreement on behalf of Defendant Connecticut Greenstar, Inc., as its president, and that Defendant Connecticut Greenstar was dissolved in January 2009 but continued to do business with Plaintiff without a proper corporate form. The amended complaint alleges that Defendant Valentin Luca represented to Plaintiff that Greenstar would compensate Larson at least partially for damages suffered from the door closers and attaches a PowerPoint presentation consistent with the representation. The amended complaint also alleges that Defendant Valentin Luca induced Plaintiff

7

to continue to order the door closes and then failed to pay Greenstar's suppliers. The amended complaint further alleges that the Greenstar entities have transferred funds to Defendant Val Luca while the Greenstar entities were insolvent and that Greenstar and Defendant Val Luca made these transfers with the actual or constructive intent to defraud Greenstar's creditors, including Larson.

Based on the facts alleged in the pleadings and supporting documents setting forth the fraud and fraudulent transfer claims, the fiduciary-shield doctrine is not applicable in this case. In addition, jurisdiction over nonresident Defendant Val Luca is appropriate based on the totality of the circumstances and "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 775. Defendant Val Luca should reasonably have anticipated being haled into court in South Dakota. For these reasons, the motion to dismiss for lack of personal jurisdiction is denied.

## II.
## WHETHER PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED?

Defendants maintain that pursuant to Fed. R. Civ. P. 12(b)(6) this Court must dismiss this case because it fails to state a legally sufficient cause of action. In considering a motion under Rule 12(b)(6) the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007), *cited in Data Mfg., Inc. v. United Parcel Service, Inc.*, 557 F.3d 849, 851 (8th Cir. 2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.* at 1965 (internal citations omitted); *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008).

Although a plaintiff need not provide specific facts in support of its allegations, *see Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200 (2007) (per curiam), it must include sufficient factual

information to provide the grounds on which its claim rests, and to raise a right to relief above a speculative level. *Twombly*, 127 S.Ct. at 1964-65 & n.3. Although Federal Rule of Civil Procedure 8 may not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). A claim must have facial plausibility to survive a motion to dismiss. *Id.* Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 129 S.Ct. at 1950.

*Counts 1 through 4*

Count 1 of the amended complaint alleges that Greenstar breached the purchase agreement by supplying Larson with non-conforming door closers. Count 2 alleges that Greenstar breached the express warranties in violation of U.C.C. § 2-313 because the door closers did not conform to the express warranties made by Greenstar. Count 3 alleges that Greenstar breached the implied warranty of merchantability under U.C.C. § 2-314. Count 4 alleges that by providing defective door closers Greenstar violated the implied warranty of fitness for a particular purpose under U.C.C. § 2-315.

Defendants contend that the facts alleged by the Plaintiffs and the attached documents underlying the factual predicate for the Plaintiffs' claims, in this case, the Purchase Agreement and the power-point presentation, establish that Plaintiffs are not entitled to any damages, and in fact, owe Defendant Connecticut Trade Company more than $1 million and also establish that the "defects" identified by Larson were self-created.

The facts alleged in the amended complaint, when viewed as true, however, possess facial plausibility, and raise more than a speculative right to relief. Each of the four counts specifies that Plaintiffs suffered direct, incidental, and consequential damages in excess of $964,000. The amended complaint specifies that Plaintiffs were damaged because of costs of fixing, testing and addressing warranty claims for defective closers. The amended complaint further specifies that Greenstar's breach of its obligation caused damage to Plaintiffs' reputation in the market, Plaintiffs' goodwill, and Plaintiffs' relationship with critical customers. Plaintiffs also allege that they have lost sales and have been forced to divert employee time and other resources to deal with the allegedly defective door closers. The allegations of the first four counts of amended complaint sufficiently set forth in detail why and how Plaintiffs were damaged. The motion to dismiss with regard to these counts is denied.

9

*Count 5 (Fraud)*

In their fraud cause of action Plaintiffs allege that Defendant Val Luca represented to Larson that Greenstar would compensate Larson for damages that Larson suffered from the door closers, Plaintiff attached the PowerPoint presentation to the amended complaint and allege that Defendant Val Luca represented in Brookings, South Dakota, on June 8, 2011, that Greenstar would assume partial responsibility for the damages suffered by Larson for the defects in the door. Plaintiffs allege that they relied on these representation and ordered more product from Greenstar. Plaintiffs further allege that Val Luca intentionally and knowingly made the representations while having no intent to perform and that the representations were part of a larger scheme in which Luca increased the amount of orders from Plaintiffs, failed to pay Greenstar's suppliers and then transferred Greenstar assets to himself. Plaintiffs allege that they made additional orders due to the misrepresentations and incurred out-of-pocket and incidental damages.

Defendants maintain that Plaintiffs failed to satisfy Fed. R. Civ. P. 9(b)'s requirement that: "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Defendants also cite *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995), for the proposition that a plaintiff alleging fraud, must identify the time, place and manner of the fraudulent conduct "as well as the identity of the person making the misrepresentation." Defendants also cited to South Dakota case law setting forth the following required elements of fraudulent misrepresentation: (1) that a false representation of a material fact was made by one or more of the Defendants; (2) that the person(s) making the representation knew the fact was not true or made the statement recklessly with no reasonable grounds for believing it to be true; (3) that the misrepresentation was made with the intent to induce the Plaintiff to act upon it; (4) that the Plaintiff took action or refrained from acting in reliance upon the misrepresentation; and (5) that the Plaintiff incurred damage from such reliance. *See Adams v. Rapid City Reg'l Hosp., Inc.*, No. 04-5067, 2006 WL 2459483 at *22 (D.S.D. Aug. 23, 2006) Both the Rule 9(b) and elements of fraud requirements were met, however, by the Plaintiffs in pleading their fraud cause of action.

Defendants also maintain that the power-point presentation and related discussions were part of an attempt by Defendant Connecticut Greenstar, Inc., to resolve disputes between the parties, and are therefore inadmissible pursuant to Fed. R. Evid. 408(a). This rule provides:

10

> Evidence of the following is not admissible--on behalf of any party--either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.

The policy behind Rule 408 is to promote the compromise and settlement of disputes. 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 408.02 (2d ed. 2012). "The policy concerns underlying Rule 408 are strongly implicated where an offer of compromise is used to prove an element of the claim the compromise offer was meant to settle." *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 966-967 (8th Cir. 2011). The Advisory Committee Notes regarding the 2011 Amendments to Rule 408 state:

> Rule 408 previously provided that evidence was not excluded if offered for a purpose not explicitly prohibited by the Rule. To improve the language of the Rule, it now provides that the court may admit evidence if offered for a permissible purpose. There is no intent to change the process for admitting evidence covered by the Rule. It remains the case that if offered for an impermissible purpose, it must be excluded, and if offered for a purpose not barred by the Rule, its admissibility remains governed by the general principles of Rules 402, 403, 801, etc.

As the Eighth Circuit has explained:

> But Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity of the claim under negotiation. To the extent that the evidence is offered for another purpose, and to the extent that either party makes an independent admission of fact, the evidence is admissible.

*Vulcan Hart Corp. v. N.L.R.B.*, 718 F.2d 269, 277 (8th Cir. 1983). On a number of occasions, the Eighth Circuit has upheld the admission of evidence of settlement negotiations. *See, e.g., Dahlgren v. First Nat'l Bank of Holdrege*, 533 F.3d 681, 699-700 (8th Cir.2008) (admission of evidence that the Bank settled claims by its successor lenders upheld for the purpose of refuting the Bank's claim that it was not liable for plaintiffs' tort claims); *Kraft v. St. John Lutheran Church of Seward, Neb.*,

414 F.3d 943, 947 (8th Cir. 2005) ("The district court did not abuse its discretion by considering Kraft's settlement negotiations with the church for the purpose of proving Kraft's knowledge of a causal connection between his injuries and the [sexual] abuse."); *Athey v. Farmers Ins. Exch.*, 234 F.3d 357, 362 (8th Cir. 2000) (no violation of Rule 408 because "[u]nder South Dakota law, an insurer's attempt to condition the settlement of a breach of contract claim on the release of a bad faith claim may be used as evidence of bad faith").

In the case at hand Plaintiffs utilize statements, some of which are contained in a power point presentation, and which represent that Defendants will assume at least partial responsibility for alleged defects, in alleging that Luca made misrepresentations that they relied on when ordering more product from Greenstar. Plaintiffs contend that Luca made fraudulent statements which are not protected by Rule 408. This position is supported by at least one court which has reasoned: "The application of an estoppel exception to Rule 408 is quite consistent with its goal of encouraging settlement, as it is difficult to understand how protecting fraud and deception will in any way advance parties' confidence in the settlement process." *Dow Chemical Co. and Subsidiaries v. United States*, 250 F.Supp.2d 748, 805 (E.D.Mich. 2003). For the purpose of deciding this motion to dismiss, Plaintiffs' allegations and attachment of the power-point presentation fall within the fraud exception to Rule 408, and the motion to dismiss the fraud cause of action is denied.

*Count 6 (Fraudulent Transfer)*

In their fraudulent transfer cause of action Plaintiffs allege that the Greenstar entities with which Val Luca had been conducting business with Plaintiffs were insolvent. Plaintiffs also allege that these Greenstar entities failed to pay the suppliers of the door closers in issue and represented to Plaintiffs that they were unable to pay Plaintiffs for losses they incurred due to the defects in the closers. Plaintiffs further allege that "[u]pon information and belief" the Greenstar entities transferred funds and other compensation to an insider, Val Luca, while the entities were insolvent. Plaintiffs allege the Greenstar entities removed or concealed their assets from their creditors by these transfers. Plaintiffs allege that the Greenstar entities and Val Luca made the transfers with the actual or constructive intent to defraud Plaintiffs. Plaintiffs also state in their amended complaint that the Greenstar entities did not receive reasonably equivalent value for the transfers, and that Plaintiffs are entitled to judgment against the Greenstar entities and Val Luca for the amount of the transfers. The

Court agrees with Plaintiffs in their position that they have alleged both actual and constructive fraudulent transfer claims.

Defendants contend that since Plaintiffs are making a claim for fraudulent transfer, Fed. R. Civ. P. 9(b) applies, and Plaintiffs have failed to meet the particularity requirements in pleading this cause of action. Defendants maintain that whether the claim in Count Six is for intentional fraudulent transfer, or constructive fraudulent transfer, the Plaintiffs are required to, but have failed, to identify the recipient, the date, and the amount of the transfer.

In *Kranz v. Koenig*, 240 F.R.D. 453 (D. Minn. Jan 4, 2007), the district court determined that Rule 9(b) applies to fraudulent conveyance claims under the Minnesota Uniform Fraudulent Transfer Act (MUFTA). In making that determination the district court explained:

> Rule 9(b) states that the particularity requirement applies to all fraud claims, and MUFTA proscribes fraudulent conduct. Moreover, the Eighth Circuit Court of Appeals has indicated that Rule 9(b) applies to fraudulent conveyance claims under the Uniform Fraudulent Transfer Act. *See Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 726 (8th Cir.2003) (affirming summary judgment on ground that plaintiff failed to set forth particular facts supporting a claim under the Iowa Uniform Fraudulent Transfer Act). Similarly, the Eighth Circuit has held that the particularity requirement applies to other antifraud statutes, such as cases involving the False Claims Act and the Racketeer Influenced and Corrupt Organizations Act. *See, e.g., United States ex rel. Joshi v. St. Luke's Hosp.*, 441 F.3d 552, 556 (8th Cir.2006); *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs.*, 48 F.3d 1066, 1069 (8th Cir.1995). Based on the broad language of Rule 9(b), as well as the Eighth Circuit's application of Rule 9(b) in similar contexts, this Court concludes that Rule 9(b) applies to MUFTA claims.

*Kranz v. Koenig*, 240 F.R.D. at 455-456.

Plaintiffs contend that fraudulent transfer claims are different than common law fraud claims and, as a result, are subject to Rule 8, and not Rule 9's heightened pleading requirements. Plaintiffs cite case law to support this position. *See, e.g., GE Capital Comm., Inc. v. Wright & Wright, Inc.*, 2009 WL 5173954 at *10 (N.D.Tex. Dec. 31, 2009) (Rule 8, not Rule 9, applies in fraudulent transfer claim against defendants who were the recipient of funds fraudulently obtained); *Pearlman v. Alexis*, 2009 WL 3161830 at *5 (S.D. Fla. Sept. 25, 2009) ("A fraudulent-transfer claim ... involves a third-party defendant who has no relationship with the plaintiff, and thus the plaintiff usually has insufficient information to plead its claim with specificity. As a result, Rule 9(b)'s

heightened pleading standard does not apply to claims brought under Florida's Uniform Fraudulent Transfer Act."). Although Plaintiffs cite to *In re NM Holdings Co.*, 407 B.R. 232, 259 (Bankr.E.D. Mich. 2009), as support for their position that Rule 8 applies to fraudulent transfer claims, the *In re NM Holdings Co.* case, while holding that Rule 9(b) does not apply to constructive fraudulent transfer claims, also holds that Rule 9(b) applies to intentional fraudulent transfer claims. *See also In re Agriprocessors, Inc.*, 2011 WL 4621826 at *4 (Bkrtcy. N.D. Iowa 2011) (the heightened pleading requirements of Rule 9(b) do not apply to constructive fraudulent transfer claims).

The line of cases which differentiate between actual and constructive fraudulent transfer claims in the application of Rule 9(b) appears to comprise the majority rule. *See In re Mervyn's Holdings, LLC*, 426 B.R. 488, 495 n.5 (Bkrtcy. D. Del. 2010); *In re Air Cargo, Inc.*, 401 B.R. 178, 192 n.7 (Bankr. D. Md. 2008) ("A larger, second line of cases differentiates between actual and constructively fraudulent conveyance claims, and only applies Rule 9(b) to complaints that allege actual fraud."); *In re Enron Corp.*, 2006 WL 2400369 at *5 (Bkrtcy.S.D.N.Y. May 11, 2006); *In re Ticketplanet.com*, 313 B.R. 46, 68 (Bkrtcy. S.D.N.Y. 2004) ("While there is authority to the contrary, the better and majority rule is that a claim for constructive fraud under § 548(a)(1)(B) need not be pleaded with particularity, as the claim is not premised on fraud but on a transfer made for inadequate consideration at a time the transferor was insolvent.").

Although *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 726 (8th Cir. 2003), the case cited in *Kranz v. Koenig*, 240 F.R.D. at 455-456, affirmed summary judgment on the ground that the plaintiff failed to set forth particular facts supporting a claim under the Iowa Uniform Fraudulent Transfer Act, the Eighth Circuit characterized the fraudulent transfer and other claims as lacking factual support and as not warranting extended discussion. It is not clear whether the plaintiff in that case was asserting constructive or actual fraudulent conveyance claims, and this Court does not view the holding in *Northwest Bank & Trust Co.* as being controlling with regard to whether Rule 9(b)'s particularity requirements apply to constructive fraudulent conveyance claims. The Court after having reviewed the merits of the different positions, will, instead, apply the majority rule that Rule 9(b) applies only to intentional fraudulent transfer claims.

*Constructive fraudulent transfer*

South Dakota's constructive fraud provision, SDCL 54-8A-5(a), provides:

14

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

Although a finding of fraudulent intent is required to show actual fraud, under the Uniform Fraudulent Transfers Act a debtor's intent in transferring assets is immaterial to a claim of constructive fraudulent transfer. *Estate of Juhnke ex rel. Juhnke v. Marquardt*, 623 N.W.2d 731, 733 (S.D. 2001).

Fed. R. Civ. P. 8 applies to constructive fraud claims.[4] Fed. R. Civ. P. 8(a) requires a pleading stating a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In addition, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The amended complaint in this case sets forth a constructive fraudulent transfer cause of action which meets these requirements, and Defendants' motion to dismiss with regard to the constructive fraudulent transfer cause of action is denied.

*Actual fraudulent transfer claim*

S.D.C.L. § 54-8A-4(a) provides in part:

> Any transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii) Intended to incur, or believed or reasonably should have believed

---

[4]The Court has applied the majority rule which utilizes Fed. R. Civ. P. 8(a) in determining the adequacy of the pleadings in a constructive fraudulent transfer claim. The Court also concludes that the amended complaint has met the particularity requirements of Rule 9(b) in setting forth the constructive fraud claim, although under the more exacting standards of Rule 9(b), the adequacy of the constructive fraudulent transfer claim becomes a closer question.

that he would incur, debts beyond his ability to pay as they became due.

As was earlier discussed, an actual fraudulent transfer claim is subject to the Rule 9(b) requirement that fraud be pled with particularity. Allegations based on fraud must state with particularity the circumstances constituting the fraud; although malice, intent, knowledge, and other conditions of mind may be alleged generally. *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 663 (8th Cir. 2012). "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007). It has been held that a plaintiff must specify "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *United States ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) (qui tam action under False Claims Act). In addition, where "allegations of fraud are ... based only on information and belief, the complaint must set forth the source of the information and the reasons for the belief." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 550 (8th Cir. 1997) (quoting *Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991) (superseded by statute on other grounds)). However, when the facts constituting the fraud are peculiarly within the opposing party's knowledge, the allegations of fraud may be pleaded on information and belief. *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 668 (8th Cir. 2001). In addition, Rule 9(b) is deemed satisfied if the allegations based on information and belief are accompanied by a statement of facts on which the belief is founded. *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783-784 (8th Cir. 2009).

The level of particularity required in the pleadings in a fraud case depends on the nature of a case and the relationship between the parties. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d at 917. The rule requiring that fraud be pled with particularity should be read "in harmony with the principles of notice pleading." *Schaller Telephone Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001)). In addition, this Court has observed that "[a] plaintiff 'need not plead fraud with complete insight before discovery is complete.' " *Northwestern Pub. Serv. v. Union Carbide Corp.*, 115 F.Supp.2d 1164, 1171 (D.S.D. 2000) (quoting *Gunderson v. ADM Investor Serv., Inc.*, 2000 WL 1154423 at

16

*3 (8th Cir. Aug.16, 2000) (unpublished opinion)); *see also Broin and Associates, Inc. v. Genencor Intern., Inc.*, 232 F.R.D. 335, 340 (D.S.D. 2005). Finally, in "determining whether a pleading is sufficient a court must determine whether there was adequate notice to the adverse party in order to enable the adverse party to respond." *Broin and Associates, Inc. v. Genencor Intern., Inc.*, 232 F.R.D. at 340.

It is peculiarly within the knowledge of the Defendants whether and when the Greenstar entities transferred funds to Val Luca while these entities were insolvent. Considering the amended complaint as a whole, there is adequate notice of the alleged actual fraudulent transfer claim to allow Defendants to respond. The motion to dismiss is also denied with regard to the actual fraudulent transfer claim.

### III.
### WHETHER THE CASE SHOULD BE DISMISSED AGAINST DEFENDANTS GREENSTAR AND TOUCH 'N HOLD BECAUSE THEY DO NOT EXIST AS INDEPENDENT BUSINESSES?

Defendants contend that "Greenstar" and "Touch 'n Hold" are merely trademarks, not companies that are amenable to suit. Defendants contend that since these companies do not exist, they have not been properly served, and the case against them should be dismissed. The main case relied upon by Defendants, *McGuckin v. Smith*, 974 F.2d 1050, 1056-1057 (9th Cir. 1992) (reversed on other grounds), acknowledges "there does not appear to be an explicit basis either in the Federal Rules of Civil Procedure or in federal statutes for the dismissal of a 'nonexistent' defendant on that ground alone." The *McGuckin* case also notes, "Such a rule may be unnecessary: a defendant who truly 'does not exist' presumably cannot be served and hence would be subject to dismissal for failure to perfect service pursuant to Rule 4(j)." *Id.* at 1056 n.5. A proof of service has been filed for Greenstar a/k/a Touch 'n Hold. Doc. 13. Since proof of service in some form with regard to this defendants exists, the motion to dismiss on the grounds stated with regard to this defendant will be denied without prejudice at this time.

### IV.
### WHETHER SOUTH DAKOTA IS THE PROPER VENUE FOR THIS CASE?

Defendants maintain that South Dakota is an improper venue for this case and that it is more

appropriate for a Connecticut court to hear this case. Defendants assert that this Court may dismiss or transfer a case that is improperly venued under Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1404(a). 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." This statute "was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, even though the venue is proper." *Van Dusen v. Barrack*, 376 U.S. 612, 634 n.30 (1964) (quoting Revisor's Note, H.R.Rep. No. 80-308, at A132 (1947), and H.R.Rep. No. 79-2646, at A127 (1946)).

"In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir.1997). This practice of according deference, however, is based on the assumption that the plaintiff's choice of venue will be a convenient one. *In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)). The Eighth Circuit has noted three factors courts must consider in deciding whether to transfer a case: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Terra Int'l, Inc. v. Mississippi Chem. Corp.*, 119 F.3d at 691. In addition to considering the statutory factors, a district court ruling on a motion to transfer must also conduct "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Id.*

Defendants maintain it is more appropriate for a Connecticut court to hear this case since the Defendants and all of the employees and assets of Connecticut Trade Company are located in Connecticut. Defendants also point out that the Plaintiffs regularly conduct business throughout the United States, in contrast to Connecticut Trade Company, which is a small company operating out of a home office at Defendant Luca's residence in Connecticut. Defendants further maintain that the Defendants' key witnesses are all located in a different jurisdiction than the forum, and that the Defendants' only connections to the forum were "minimal product sales."

Plaintiffs contend that while it may be inconvenient for Defendants to litigate in South Dakota, a transfer to Connecticut would simply shift that inconvenience to Plaintiffs. Plaintiffs point out that

18

judicial economy favors their choice of venue since this Court has already invested resources into this case by virtue of addressing Defendants' motion to dismiss. Plaintiffs have identified numerous party and non-party witnesses that live in or close to South Dakota. In addition, Plaintiffs point out that South Dakota law applies in this case because the Agreement contains a South Dakota choice-of-law clause, and that is preferable to have a South Dakota court apply South Dakota law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947) ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.").

After weighing all the pertinent factors, the Court has determined that a transfer of venue is not warranted, and the motion to transfer venue is denied. Accordingly,

IT IS ORDERED that the motion to dismiss the Amended Complaint for failure to state a claim under Fed. R. Civ. P. Rule 12(b)(6), or in the alternative, to transfer the case to the District of Connecticut is in all respects denied.

Dated this 6th day of March, 2013.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY  _____
        DEPUTY